# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN and JANE DOE,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:10-cv-00630-AKK** |
| **BLUE CROSS BLUE SHIELD** | ) | |
| **OF ALABAMA;** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The court considers Plaintiffs John and Jane Doe's ("Plaintiffs") Motion for Interlocutory Summary Judgment, (doc. 15),[1] and Defendant Blue Cross and Blue Shield of Alabama's ("BCBS" or "Blue Cross") Cross-Motion for Summary Judgment, (doc. 22), and Motion to Strike, (doc. 25).  The parties agree that the dominant question in this case is whether BCBS is subject to Alabama Code §§ 27-20A-1 *et. seq.*, which requires certain health insurers to cover treatment for alcoholism.  This is a novel question under Alabama law.  The parties find themselves in federal court because Plaintiffs filed a cause of action via the

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

Employee Retirement Income Security Act's ("ERISA") Savings Clause, 29

U.S.C. § 1144 (b)(2), which, as Blue Cross admitted, preserves the application of

state insurance law.  Thus, while the remedy sought by Plaintiffs provides the

federal jurisdiction in this case, Alabama law alone will determine the case's

resolution.

For the reasons stated below, the court GRANTS, in part, and DENIES, in

part, BCBS's Motion to Strike, DENIES Plaintiffs' Motion for Interlocutory

Summary Judgment, and GRANTS BCBS's Cross-Motion for Summary

Judgment.

## I.  FACTS

The parties do not dispute, and have stipulated to, all of the material facts.

Doc. 19.  Plaintiff Jane Doe is a beneficiary of an employee welfare benefit plan

through her husband's employer, John Doe & Associates, P.C. ("the Doe Plan").

*Id.* at 1.  Blue Cross issued the group insurance contract for the Doe Plan.  *Id.*  The

Doe Plan's coverage for substance abuse includes certain hospital treatment and

limited outpatient treatment, but does not include coverage for treatment at

residential facilities.  *Id.* at 2-3.  The Plan excludes coverage for treatment by free-

standing substance abuse facilities.  *Id.*        at 3.

On August 12, 2008, Mrs. Doe was admitted to Bradford Health Services

2

("Bradford") for five days for alcohol dependence. *Id.* Bradford is classified as a specialty hospital, so BCBS paid the claim for Mrs. Doe's treatment. *Id.* Almost a year later, on July 10, 2009, Mrs. Doe was admitted to Brookwood Medical Center ("Brookwood") for nine days with an alcohol dependance diagnosis. *Id.* at 4. Blue Cross considers Brookwood a hospital and so paid the claim for this treatment. *Id.*

The issue in this case involves treatment Mrs. Doe received at Cumberland Heights Treatment Center ("Cumberland Heights") in Nashville, Tennessee on August 17, 2008 (for four days) and September 22, 2008 (for thirty-one days). *Id.* at 3. Cumberland Heights is an out-of-state free-standing substance abuse residential facility that is not licensed or certified by the Alabama Board of Health or Alabama Mental Health Board. *Id.* at 4. Blue Cross denied Plaintiffs' claims for Mrs. Doe's treatment at Cumberland Heights. *Id.* Plaintiffs contend that §§ 27-20A-1 *et seq.*, required Blue Cross to cover and pay for treatment at Cumberland Heights as well. Plaintiffs seek recovery of costs and a determination whether, in the future, Blue Cross is compelled to cover treatment for alcoholism under §§ 27-20A-1 *et seq.* Blue Cross denies it is bound by §§ 27-20A-1 *et seq.*

## II. MOTION TO STRIKE

Before the court addresses the parties' motions for judgment, it must

consider Blue Cross's motion to strike Plaintiffs' Exhibits A-1 through A-18 on

relevancy grounds and Exhibits A-11 through A-15 on relevancy and as a

combination of unauthenticated, extrinsic, and hearsay evidence.  Doc. 25.

Plaintiffs do not oppose Defendant's Motion to Strike with respect to

Exhibits A-11 through A-15, (doc. 26), thus the motion to strike is GRANTED as

to those exhibits.

As to the remaining exhibits, Exhibits A-1 through A-10 and A-16 through

A-18, which Blue Cross argues the court should strike for lack of relevance, (doc.

25 and 27), a "motion to strike will usually be denied unless the allegations have

no possible relation to the controversy and may cause prejudice to one of the

parties."  *Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1035 (M.D.

Fla. 2000) (citations and internal quotation marks omitted).  Additionally, the

Federal Rules of Evidence favor inclusion rather than exclusion.  *Young v. Ill.*

*Cent. Gulf R.R. Co.*, 618 F. 2d 332, 337 (5th Cir. 1980) ("The federal rules and

practice favor admission of evidence rather than its exclusion if it has any

probative value at all." (quoting *U.S. v. Carranco*, 551 F. 2d 1197 (10th Cir.

1977))).  Evidence is relevant if it is probative of any fact that is of consequence to

the determination of the case.  FED. R. EVID. 401; *see also Lubbock Feed Lots, Inc.*

*v. Iowa Beef Processors, Inc.*, 630 F. 2d 250, 267 (5th Cir. 1980) ("[I]f probative

of any fact that is of consequence to the determination of the action, evidence is relevant within the meaning of the Federal Rules, and is therefore admissible.") (citations and internal quotation marks omitted).

The exhibits in question consist of various past and present versions of what is now Alabama Code §§ 27-20A-1 *et seq*.  Blue Cross contends that because the language of the current code is clear, there is no need to resort to the legislative history.  Doc. 25 at 4.  BCBS's point, it seems, is that if the language is clear, it is irrelevant how or why the legislature chose that language.  But the clarity of the current language of §§ 27-20A-1 *et seq*. merely informs the decision of the court whether or not to look past that language.  The alleged absence of ambiguity does not determine the *relevancy* of the legislative history, especially where Plaintiffs' primary claim involves changes made during drafting of the bill.

Moreover, contrary to Blue Cross's assertion, Plaintiffs do not rely on the legislative history of §§ 27-20A-1 *et seq*. to explain what the current language itself means. Instead, Plaintiffs contend that the *choice* of that language to the exclusion of the bill's prior language demonstrates that the legislature intended to include nonprofit corporations like Blue Cross.  It is for the court to decide whether Plaintiffs are correct and, if so, what weight to give that evidence. The court cannot determine that the legislative history is wholly irrelevant.  Accordingly, the court

5

DENIES the motion to strike Exhibits A-1 through A-10 and A-16 through A-18.

### III. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id.* at 324 (internal citations and quotations omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence in the light most favorable to the nonmoving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The existence of cross-motions for summary judgment does not affect the

applicable Rule 56 standard. *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1330 (S.D. Ala. 2003) (citing *Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F. 3d 1228, 1233 (11th Cir. 2001)). The court considers each motion separately and need not necessarily grant one or the other. *Id.* ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." (quoting *U.S. v. Oakley*, 744 F. 2d 1553, 1555 (11th Cir. 1984))). The existence of cross-motions, however, may indicate a belief of the parties that there is agreement on the material facts. *Id.* The parties here have stipulated to the facts, obviating the need to determine whether any disputed facts exist.

## IV.  LEGAL ANALYSIS

Alabama courts have not opined on the precise issue before the court. In short, the parties ask the court to determine whether a law enacted as part of the insurance code in 1979 that requires coverage for the treatment of alcoholism should apply to Blue Cross, which is generally exempt from insurance laws. As discussed below, this court finds that Plaintiffs fail to establish that the language of the Alcoholism Treatment Act is sufficiently precise to impliedly repeal the pre-existing insurance exemptions for Title 10 Chapter 4 companies like Blue Cross.

7

Accordingly, Blue Cross is entitled to judgment as a matter of law.

## A. Statutory Authority

The parties agree that the court must determine whether §§ 27-20A-1 *et seq.* ("Alcoholism Treatment Act") apply to corporations, like Blue Cross, that were enacted under the Alabama Code §§ 10-4-100 *et seq.*  To do so requires parsing the language of those sections as well as § 27-1-4(2).

### 1. Alabama Code Applying to Not for Profit Health Care Service Plans

Blue Cross is organized under Article 6, Chapter 4, Title 10 of the Alabama Code.  *See Blue Cross & Blue Shield of Ala. v. Protective Life Ins. Co.*, 527 So. 2d 125, 126 (Ala. Civ. App. 1987) ("Blue Cross is a purely statutory creature.  Its purpose and all of its powers are derived from Ala. Code (1975) §§ 10-4-100 through 115.").  "There can be no doubt that Blue Cross is a special purpose corporation, organized under § 10-4-100 for the specific and limited purpose of maintaining a health service plan for subscribers." *Id.* at 128.  The provisions of §§ 10-4-100 *et seq.* are what simultaneously give Blue Cross its ability to operate in Alabama and prevent Blue Cross from being governed by Alabama's general insurance code, Title 27.

Two sections of Title 10 apply to this case.  The enabling portion of code, ALA. CODE § 10-4-100 (1975), states:

8

> Any nonstock corporations organized not for profit for the purpose of
> establishing, maintaining and operating a health care service plan under which
> health services are furnished to such of the public who become subscribers to
> such plans pursuant to contracts are authorized and shall be governed by the
> provisions of this article.

The exempting portion of the code, ALA. CODE § 10-4-115 (1975), states:

> No statute of this state applying to insurance companies shall be applicable to
> any corporation organized under the provisions of this article and amendments
> thereto or to any contract made by such corporation unless expressly
> mentioned in this article and made applicable; except that such corporation
> shall be subject to the provisions regarding annual premium tax to be paid by
> insurers on insurance premiums.

By its explicit language, § 10-4-115 exempts corporations organized under this

section of the code from Alabama statutes that govern insurance companies.

### 2. Alabama's General Insurance Code Exemptions to Applicability

In the opening chapter of Title 27, Alabama's general insurance code

explicitly reiterates the exemption provided to corporations organized under § 10-4-

100: "This title shall not apply as to . . . Nonprofit corporations for establishment of

hospitalization plan under Section 10-4-100 et seq., except to the extent now or

hereafter provided in such laws . . . ."  ALA. CODE § 27-1-4(2) (1975).  In so stating,

the code  repeats the framework by which a legislature may make insurance laws

applicable to § 10-4-100 corporations.  Together, § 10-4-115 and § 27-1-4(2)

("Exempting Statutes") provide explicit exemptions from insurance laws for

companies like Blue Cross while also outlining the way to create exceptions to

9

those exemptions.

### 3. Alabama's Code for Alcoholism Treatment in Group Plans

Sections 27-20A-1 *et seq.* set out certain requirements for providers of health insurance to ensure that those providers include coverage for treatment for alcoholism when that treatment is prescribed.  The governing provision, ALA. CODE §27-20A-2 (1975), states:

> No group, blanket, franchise, or association health insurance policy providing coverage on an expense incurred basis, nor group, blanket, franchise, or association service or indemnity type contract issued by a nonprofit corporation, nor group-type self insurance plan providing protection, insurance, or indemnity against hospital, medical, or surgical expenses, nor health maintenance organization plan shall be issued, delivered, executed, or renewed in this state, or approved for issuance or renewal in this state by the Commissioner of Insurance after 90 days beyond the effective date of this chapter, unless such policy, contract, or plan, at the option of the policyholder or sponsor, provides benefits to any insured, subscriber, or other person covered under the policy, contract, or plan for expenses incurred in connection with the treatment of alcoholism when such treatment is prescribed by a duly licensed doctor of medicine.

The code therefore requires health insurers to provide coverage for treatment of alcoholism.  The provision also explicitly refers to "nonprofit corporations."  The code goes on to explain the type of benefits required in § 27-20A-3, stating in part:

> The benefits to be offered under this chapter shall include inpatient or residential treatment rendered to the insured, subscriber or other person covered, at a state licensed hospital or at a short term residential alcoholism treatment facility or detoxification facility duly licensed or certified as such by the Alabama Board of Health or the Alabama Mental Health Board. Benefits shall also include outpatient treatment rendered . . . [by a] facility

10

duly licensed or certified as such by the Alabama Board of Health or the Alabama Mental Health Board.

By its terms, Chapter 20A requires coverage for treatment of alcoholism in hospitals as well as residential treatment and outpatient treatment, provided they are licensed or certified by the state of Alabama.

### B. Case Law on Language Conflicting with §§ 10-4-100 *et seq.*

In short, the issue in this case arises because § 27-20A-2 explicitly applies to nonprofit corporations like Blue Cross, while § 10-4-115 and § 27-1-4(2) explicitly exempt such corporations from insurance laws.  Moreover, § 10-4-115 specifies how to apply insurance laws to Blue Cross, but the legislature did not follow those in enacting § 27-20A-2. The question is how to resolve this apparent conflict, especially in light of the conflicting guidance on this issue from three key cases, all of which involved Blue Cross.

*1. General Language is Not Enough*

In the first case, *Hayden v. Blue Cross & Blue Shield of Ala.*, 843 F. Supp. 1427, 1437-38 (M.D. Ala. 1994), Judge W. Harold Albritton of the Middle District of Alabama held that a general repealer clause in a new statute was insufficient to repeal the exemption provided in § 10-4-115 and § 27-1-4(2).  Judge Albritton determined that the clause "notwithstanding any other provision of law" found in § 27-46-1, a law requiring direct payment to anesthesiologists by health insurers, was

11

insufficient to manifest the legislature's intent to apply the statute to Blue Cross. *See id.* at 1437.

Judge Albritton found that the legislature did not intend to repeal a specific statute, making § 27-46-1 insufficient to repeal §  10-4-115 and § 27-1-4(2).  *Id.* Though Judge Albritton considered the possibility of an implied repeal, he reiterated that a "[r]epeal is to be regarded as implied only if necessary to make the later enacted law work, and even then only to the minimum extent necessary."  *Id.* at 1438 (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976)). Moreover, citing several Supreme Court cases, he explained that repeals by implication are disfavored,  *id.* at 1436,[2] and that there was no indication that the legislature created § 27-46-1's payment requirements to set up a uniform scheme that would require a repeal.  *Id.* at 1439.  Thus, based on Judge Albritton's reasoning, which this court finds persuasive, a general repealer clause in later legislation governing healthcare providers did not alter the exemption from insurance laws provided for Blue Cross under § 10-4-115 and § 27-1-4(2).

   *2. Specific Language of § 10-4-100 Controls*

   The Alabama Supreme Court then provided its view on a similar issue, in large part agreeing with the rationale expressed by Judge Albritton: "we conclude

---

   [2]*See, e.g.*, *Radzonower*, 426 U.S. at 155; *Morton v. Mancari*, 417 U.S. 535, 549 (1974).

that Blue Cross is exempted from the Alabama Provider Acts by the provisions of §
10-4-115 and § 27-1-4." *Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen*, 714
So. 2d 293, 297 (Ala. 1998).[3] *Nielsen* presented the court with three acts (Alabama
Code §§ 27-19A-1 *et seq.*, §§ 27-45-1 *et seq.*, and §21-1-19, jointly the "Provider
Acts") that required entities providing health insurance in Alabama to conform to
certain requirements for payment or assignment of benefits. *See id.* at 295.

The *Nielsen* court presented the question as almost purely an issue of
legislative intent. *Id.* at 296 ("The first question presented could be restated as
follows: Did the Legislature, when it adopted acts permitting patients to choose
their medical-services providers, intend to exempt Blue Cross from the coverage of
those acts?"). The court then provided its two guiding rules for statutory
interpretation. First, it explained how it performs analysis of statutory construction:

> When a court is called upon to construe a statute, the fundamental rule is that
> the court has a duty to ascertain and effectuate legislative intent expressed in
> the statute, which may be gleaned from the language used, the reason and
> necessity for the act, and the purpose sought to be obtained.

*Id.* (quoting *Ex parte Holladay*, 466 So. 2d 956, 960 (Ala. 1985)). Then the court

---

[3]The Alabama Supreme Court's decision came after the 11th Circuit certified the question to
them, *Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen*, 116 F.3d 1406 (11th Cir. 1997), and
preceded the ultimate resolution of the case by the 11th Circuit, *Blue Cross & Blue Shield of
Alabama, Inc. v. Nielsen*, 142 F.3d 1375 (11th Cir. 1998). For purposes of this Memorandum
Opinion, references to "*Nielsen*" will refer only to the Alabama Supreme Court's opinion. The 11th
Circuit opinions are not relevant to the case at bar.

explained the limitations on the court in interpreting statutory language:

> Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.

*Id.* (quoting *IMED Corp. v. Sys. Eng'g Assocs. Corp.*, 602 So. 2d 344, 346 (Ala. 1992).

Relying largely upon those two canons of statutory interpretation, the court concluded that "the language of § 10-4-115 plainly and unambiguously states that corporations formed under §§ 10-4-100 *et seq.*, as Blue Cross was, are not regulated by insurance laws of this State unless §§ 10-4-100 *et seq.* are expressly amended to apply such laws." *Id.* The court buoyed that conclusion by noting that § 27-1-4(2) reiterates the insurance law exemption for § 10-4-100 corporations unless an amendment is made to §§ 10-4-100 *et seq. Id.* at 297. Noting that the legislature is presumed to know the existing law, the court concluded:

> [W]e can presume that if the Legislature had intended for [the Provider Acts] to apply to companies like Blue Cross, it could have eliminated any question by expressly amending § 10-4-100 et seq. to specify that those statutes would, in fact, apply.

*Id.* Because the legislature chose not to amend §§ 10-4-100 *et seq.*, the court determined it could not avoid the unambiguous language required by the statute in order to apply insurance laws to corporations like Blue Cross.

14

*3. Specific Language Can Impliedly Repeal § 10-4-115*

In 2004, the Alabama Supreme Court revisited the topic, this time concluding

that a sufficiently specific clause in later-enacted insurance law could impliedly

repeal the exemptions provided in § 10-4-115 and § 27-1-4(2). *See Blue Cross &*

*Blue Shield of Ala. v. Hodurksi*, 899 So. 2d 949, 960 (Ala. 2004). In *Hodurski*, the

court again faced conflicting language between a newly passed law and the

insurance exemptions of § 10-4-115 and § 27-1-4(2). *Id.* at 956. However, this

time, the more recent law made a specific reference to the otherwise exempted

corporations like Blue Cross. *Id.* The court highlighted the fact that "the statute at

issue in this proceeding, § 27-51-1, expressly refers to companies, such as BCBS,

operating pursuant to Title 10, Chapter 4, of the Alabama Code." *Id.* The court

distinguished that from the amendments in *Nielsen*, noting that "those amendments

did not in any way refer specifically to companies operating pursuant to Title 10,

Chapter 4, of the Code." *Id.*

The court further distinguished the *Nielsen* opinion. It explained:

*Nielsen* does not establish a hard-and fast rule that the only way the
Legislature could ever subject companies, such as BCBS, operating pursuant
to Title 10, Chapter 4, of the Alabama Code, to changes in the Insurance
Code would be by way of the amendment procedure provided for by § 10-4-
115 and § 27-1-4(2). . . . [The *Nielsen* court] did not hold . . . that such an
amendment is the exclusive means for eliminating any question; the facts here
presented were not before this Court in *Nielsen*, and, further, such a holding
would go beyond settled principles of law dealing with the power of the

15

Legislature to bind subsequent legislatures to a specific course of conduct. *Id.* at 956-57.  The point, the *Hodurski* court emphasized, was that the amendments in *Nielsen* "were not sufficiently specific to justify the conclusion that the Legislature intended to deviate from the requirements in § 10-4-115 and § 27-1-4." *Id.*

Finally, the *Hodurski* court went to great lengths to explain that their decision rested on a finding of implied repeal.  *See id.* at 958-59.  While the newer legislation, § 27-51-1, did not repeal the insurance exemptions altogether, it did repeal them for purposes of that specific statute (§ 27-51-1).  *Id.* at 961.  The court would "flout clear legislative intent if [it] refuse[d] to recognize implied repeal of the conflicting provisions."  *Id.* at 960.  Moreover, no re-enactment of § 10-4-115 or § 27-1-4 would revive them with respect to the more specific statute unless those re-enactments themselves became the more specific laws.  *See id.* at 961.  The court concluded that Blue Cross is subject to laws in Title 27 that *specifically* state that they apply to § 10-4-100 corporations.  *Id.* at 956-57.

## C. § 27-20A-2 Not Sufficiently Specific to Repeal § 10-4-115

Plaintiffs argue that § 27-20A-2 is sufficiently specific to bring it under the Alabama Supreme Court's decision in *Hodurski*.  The court disagrees.

### 1. Language Does Not Indicate A Specific Statute

Blue Cross expends much energy trying to convince this court that the language in § 10-4-115 and § 27-1-4(2) is unambiguous and, therefore, it cannot be subject to an insurance law unless §§ 10-4-100 *et seq.* are amended. But the Alabama Supreme Court clearly stated in *Hodurski* that amendments to §§ 10-4-100 *et seq.* are not the "exclusive means" for demonstrating a clear legislative intent to subject companies like Blue Cross to insurance laws. *Hodurski*, 899 So. 2d at 956-57. Indeed, Blue Cross's Motion for Summary Judgment acknowledges that "after *Hodurski*, an express reference to § 10-4-100 corporations in an insurance law may serve as the functional equivalent of an amendment to the Enabling Legislation." Doc. 22. Thus, this case must turn on whether the language of § 27-20A-2 is specific enough to amount to an express reference and implied repeal.

The *Hodurski* court still reiterated that "repeal by implication is not favored" and would only be appropriate where "the provisions of two statutes are directly repugnant." *Hodurski*, 899 So. 2d at 959 (quoting *Shiv-Ram, Inc. v. McCaleb*, 892 So. 2d 299, 312 (Ala. 2003) (internal quotations omitted)). In *Hodurski*, that repugnance existed because of the direct contradiction in allowing the § 10-4-115 exemption and the language of § 27-51-1 purporting to override that exemption. The two statutes could not co-exist as written. In *Hayden*, however, the "two statutes c[ould] co-exist by merely exempting Blue Cross and any other § 10-4-100

17

corporations." 843 F. Supp. at 1438.  The statutes were not directly repugnant because the alleged repealer did not sufficiently reference the prior legislation. Thus, the court found no implied repeal.

Here, § 27-20A-2's reference to "non-profit corporations," even in the context of discussing health service providers, is not enough to specifically reference the existing legislation.  Thus, it is not directly repugnant to § 10-4-115 and § 27-1-4(2) and does not allow this court to find an implied repeal.  As in *Hayden* and *Nielsen*, if the enacting legislature intended to repeal § 10-4-115 and § 27-1-4(2) or to make Blue Cross subject to §§ 27-20A-1 *et seq.*, it needed only to specifically reference Title 10 Chapter 4 or, to be even clearer, to enact an exemption under §§ 10-4-100 *et seq.*

Indeed, it is clear the legislature knows how to apply insurance laws to Blue Cross when it intends to do so.  Section 10-4-115 contains several exceptions applying various provisions to the otherwise exempt § 10-4-100 corporations.  *See* § 10-4-115(1) through § 10-4-115(10) (including a variety of exceptions applying Title 27 provisions to § 10-4-100 corporations).  Likewise, Title 27 contains several sections specifically applying the law to corporations organized under Title 10 Chapter 4.  *See, e.g.*, ALA. CODE § 27-4A-2(6) (1975) (defining "INSURER" to include "every non-profit corporation organized pursuant to Sections 10-4-100 to

10-4-115, inclusive"); ALA. CODE  § 27-7-1(6) (1975)  (defining "INSURER" to

include "a health care service plan licensed pursuant to Article 6, commencing with

Section 10-4-100 of Chapter 4 of Title 10"); ALA. CODE § 27-55-2(9) (1975)

(defining "HEALTH CARRIER" to include "entities created pursuant to Article 6

(commencing with Section 10-4-100), Chapter 4, Title 10").  These several, specific

references support the argument that had the legislature intended to apply the law to

Blue Cross, it knew how to do so.

### 2.  Legislative Intent is Determined by the Enacted Law

Plaintiffs rest much of their case on the argument that the legislature intended

to include companies like Blue Cross when it enacted the Alcoholism Treatment

Act.  In support of that assertion, Plaintiffs offer past versions of the bill as it was

debated in the Alabama Legislature.  Doc.15, Exhibits A-1 through A-18.  While the

court recognizes the possibility that changes were made to the Alcoholism

Treatment Act in order to include companies like Blue Cross, the court is still bound

by *Hodurski*.

Even in *Hodurski*, which allowed a limited implied repeal of the Exempting

Statutes, the Alabama Supreme Court focused only on the language of the currently

enacted legislation.  Plaintiff cites no case under Alabama law, and the court is not

aware of any such case, that allows for implied repeal based on legislative history.

19

Indeed, the fact that Plaintiffs feel compelled to explain what the legislature meant by "nonprofit corporations" and what the inclusion of that phrase means is indicative of the statute's underlying lack of specificity.

The court is sympathetic that § 27-20A-2's plain language could include nonprofit corporations that provide healthcare service plans.[4]  Likewise, Blue Cross is, to the court's knowledge, the only such nonprofit corporation in the state. And though the 1979 legislature may well have intended to include BCBS under the act, such a determination would rely in part on an investigation of the legislative history, an investigation Plaintiffs' counsel encourages.  But the *Hayden*, *Nielsen*, and *Hodurski* line of cases look exclusively to the code as enacted and the final language chosen in order to glean the legislature's intent.

Unfortunately for Plaintiffs, the Alcoholism Treatment Act, as enacted, does not contain a sufficiently clear and express reference to §§ 10-4-100 *et seq.* for this court to determine that the 1979 legislature aimed to repeal the prior *legislation*. Conversely, in *Hodurski*, the acting legislature made its intention clear by specifically referencing companies acting under the legislation it intended to repeal. *See Hodurski*, 899 So. 2d at 956 ("The statute at issue in this proceeding, § 27-51-1,

---

[4]While the court is sympathetic to Plaintiffs' argument that words may be preferable to numerical Code references to enhance lay person understanding, (doc. 16 at 14-15), the Alabama legislature uses numerical references to ensure specificity.  The absence of such references causes the very lack of clarity from which Plaintiffs' arguments now suffer.

expressly refers to companies, such as BCBS, operating pursuant to Title 10, Chapter 4, of the Alabama Code."). As the court indicated in *Hayden*, the issue is whether the language of a later statute "manifest[s] the legislature's intent to repeal any *specific statute*." 843 F. Supp. at 1437 (emphasis added). Whatever may be said of the 1979 legislature's intent to include companies like Blue Cross, it seems clear that the language of § 27-20A-2 does not include a sufficient reference to the legislation, either §§ 10-4-100 *et seq.* or § 27-1-4(2), for this court to find an implied repeal.

### D. Blue Cross's Denial of Out-of-State Claims

Blue Cross also filed for summary judgment based on Mrs. Doe's treatment at out-of-state clinics that do not meet the Alabama certification requirements of § 27-20A-3. In short, § 27-20A-3 states that the benefits offered by providers under § 27-20A-2 need only include facilities licensed by either the Alabama Board of Health or the Alabama Mental Health Board. Defendant asserts that because Plaintiffs' claims arise from visits to treatment centers that were not Alabama-certified, Mrs. Doe's treatment falls outside of §§ 27-20A-1 *et seq.* and, therefore, BCBS did not violate the statute. Plaintiffs argue that Mrs. Doe resorted to out-of-state treatment only because the required in-state treatment was not covered and was more expensive than treatment out-of-state. Thus, Plaintiffs' harm, the cost of treatment, allegedly results from BCBS's failure to cover in-state residential and outpatient alcoholism

21

treatment.

While Plaintiffs may have felt justified to seek treatment out-of-state, the statute at issue is clear – it covers only licensed Alabama facilities. Therefore, even if Plaintiffs are correct that §§ 27-20A-1 *et seq.* apply to BCBS, they will not be due coverage for the Cumberland Heights treatment. In any event, because Plaintiffs seek a declaration regarding whether §§ 27-20A-1 *et seq.* apply to Blue Cross and because the court decides that issue in Blue Cross's favor, the court need not reach Blue Cross's alternate argument and Plaintiffs' defense to same.

## IV.  CONCLUSION

For the reasons stated above, Blue Cross's motion to strike, (doc. 25), is GRANTED in part and DENIED in part, Blue Cross's cross-motion for summary judgment, (doc. 22), is GRANTED, and Plaintiffs' motion for interlocutory summary judgment, (doc. 15), is DENIED.


Done this 18th day of October, 2010.[5]


**ABDUL K. KALLON**
**UNITED STATES DISTRICT JUDGE**

---

[5]The court originally entered this opinion under seal on September 17, 2010, but has unsealed the opinion pursuant to parties' request and amended it accordingly.